985 So.2d 1147 (2008)
Angela Louise EDWARDS, Personal Representative of the Estate of Sheena Nicole Edwards, Appellant,
v.
C.A. MOTORS, LTD., d/b/a "Acura of Orange Park," Appellee.
No. 1D07-4162.
District Court of Appeal of Florida, First District.
June 18, 2008.
Rehearing Denied July 23, 2008.
*1148 William J. Dorsey, Jacksonville, for Appellant.
Frank W. Hession and Robert Guild, Jacksonville, for Appellee.
KAHN, J.
Twenty-year-old Sheena Nicole Edwards and her unborn son sustained fatal injuries when an Acura MDX driven by Rosemary Wills struck the vehicle in which Sheena was a passenger. Appellant Angela Louise Edwards, Sheena's mother, subsequently brought this wrongful death action against appellee C.A. Motors, owner of the auto dealership that leased the accident vehicle to Ms. Wills. Ms. Edwards now appeals a summary judgment for appellee, founded on the trial court's determination that appellee was immunized from suit because the lease agreement complied with Florida law regarding minimum insurance requirements for long-term leases. For the reasons that follow, we reverse.

BACKGROUND
Ms. Wills' 48-month lease of the accident vehicle, an Acura MDX, began May 18, 2002. The lease agreement obligated Ms. Wills to procure an auto insurance policy with coverage providing the following minimum limits: $100,000 for bodily injuries to any one person, $300,000 for bodily injuries for any one accident, and $50,000 for property damage. Significant here, the agreement also provided: "Lessor may change the amounts of required insurance." The parties do not dispute that Ms. Wills obtained the required coverage and her insurance policy was valid and in effect at the time of the accident.
In its answer to Ms. Edwards' suit, C.A. Motors raised the affirmative defense that recovery is barred by section 324.021(9)(b), Florida Statutes (2006). The statute immunizes a vehicle lessor from liability for damages caused by a lessee's negligence so long as the lessee has obtained bodily injury coverage of at least $100,000 per person and $300,000 per accident, and provided that the lease term is one year or longer. Ms. Edwards argued in response that the lease provision reserving to appellee the right to "change the amounts of required insurance" did not strictly comply with the statute and rendered the statutory immunity inapplicable.
The trial court granted final summary judgment for the dealership, having determined that Ms. Wills' lease strictly complied with the statute because it "contain[ed] specific references to the required amounts of insurance" and "[did] not allow[ ] for a change below the minimum statutory requirements." Appellant now seeks review.

ANALYSIS
Florida courts established as an element of our common law, and long adhered to the rule, that the owner of a dangerous instrumentality is vicariously liable for damages caused by another person's use of *1149 the property. See S. Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 631 (1920) (quoting Pollock, Law of Torts 506). The supreme court in Anderson held that the owner of an automobile  a "highly dangerous agency"  must be "liable for any injury which might be committed through [a permissive user's] negligence." Id. at 636. In 1959, the supreme court extended the doctrine of dangerous instrumentalities to cover rented automobiles. Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 837 (Fla.1959) (noting "the assumption that an owner cannot deliver a vehicle into the hands of another without assuming, or continuing, his full responsibility to the public").
In 1986, however, the Legislature crafted a statutory exception to the dangerous instrumentality doctrine for title owners of vehicles on long-term lease. See generally Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 580 (Fla.1996) (discussing history of statutory exception to dangerous instrumentality doctrine). Beginning in 1987, the presently numbered section 324.021(9)(b), Florida Statutes, broadly limited vehicle lessors' liability in cases involving long-term leases where lessees procure their own insurance coverage. The present version of the statute provides in relevant part:
The lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability or not less than $500,000 combined property damage liability and bodily injury liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this subparagraph shall be applicable so long as the insurance meeting these requirements is in effect. The insurance meeting such requirements may be obtained by the lessor or lessee, provided, if such insurance is obtained by the lessor, the combined coverage for bodily injury liability and property damage liability shall contain limits of not less than $1 million and may be provided by a lessor's blanket policy.
§ 324.021(9)(b)(1), Fla. Stat. (2006).
Because the statute is in derogation of the common law rule imposing vicarious liability, the lease agreement must strictly comply with the statute for C.A. Motors to claim protection as a non-owner of the accident vehicle for the purpose of determining liability. See Ady, 675 So.2d at 580 (holding that "there must be strict compliance with the express provisions of section 324.021(9)(b) before a title owner of a motor vehicle can receive the benefits of this statutory exception to the dangerous instrumentality doctrine"); see generally Fla. Steel Corp. v. Adaptable Devs., Inc., 503 So.2d 1232, 1234 (Fla.1986) ("It is a rule of statutory construction that any statute in derogation of the common law requires strict compliance with its provisions by one seeking to avail himself of its benefits."); Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla. 1977) (explaining that statutes in derogation of common law must be strictly construed).
The case law holds that a lease agreement which, by its text, allows either party to abrogate the statutorily required insurance does not strictly comply with the statute. In Rodriguez-Cespedes v. Creative Leasing, Inc., the Third District determined that a lease agreement failed strictly to comply because it "provided only that [the lessee] was to procure the *1150 insurance required under the lease. Neither the lease agreement, the vehicle lease order, the business use form, nor the insurance certification contained the 100/300/50 insurance requirement." 728 So.2d 811, 813 (Fla. 3d DCA 1999). Because the agreement did not, as the statute mandates, require specific policy limits, the court concluded that the lessor could not escape liability for damages due to the lessee's negligence, even though, "some months" before the accident that gave rise to the lawsuit, the lessee "had secured a liability policy with 100/300/50 coverage." Id.
A lease requiring the lessee to obtain either (a) $100,000/$300,000/$50,000 bodily injury and property coverage or (b) "a combined single limit of $300,000 for bodily injuries and property damage" similarly did not comply with a prior version of the statute, which omitted the alternative in the present version permitting a lessee to obtain a policy covering bodily injuries and property damage. Gen. Motors Acceptance Corp. v. Davis, 664 So.2d 1025, 1026-28 (Fla. 2d DCA 1995) (construing § 324.021(9)(b), Fla. Stat. (1993)); accord Bush Leasing, Inc. v. Gallo, 634 So.2d 737, 741 (Fla. 1st DCA 1994) (holding that lease agreement requiring single-limit coverage of $500,000 did not strictly comply with then-effective version of statute, which omitted reference to single-limit policies).
Here, the lease agreement properly tracked the statute's requirements of minimum coverage. The agreement went beyond that, however, and reserved to appellee, the lessor, the unilateral right to "change the amounts of required insurance," without imposing any standards governing appellee's discretion to modify the insurance requirements.
Perhaps only an unscrupulous or unwise lessor would expose itself to potential liability under the dangerous instrumentality doctrine by reducing insurance coverage requirements to amounts less than the statutory minimums. Nevertheless, the unambiguous text of the lease agreement in this case gives appellee the authority to do so. The lease agreement, by its text, authorizes appellee to disregard the requirements of the statute. This renders the agreement in this case analogous to that in Creative Leasing, which did not specify minimum insurance coverage. Similarly, the agreements in Davis and Bush Leasing authorized the lessee to procure an insurance policy not authorized by the statute, but which provided substantial liability coverage, perhaps even more, in some instances, than required by the statute. See Creative Leasing, 728 So.2d at 813; Davis, 664 So.2d at 1026-27; Bush Leasing, 634 So.2d at 741.
This agreement, like those in the cases cited, authorizes a course of conduct that departs from the requirements of the statute. Appellee has argued it would never have taken such a step. Our review, however, is constrained by the text of the lease. In the absence of any contract language limiting the dealership's modification power solely to conform to future changes to the law, we cannot conclude that the lease agreement, as written, strictly complies with section 324.021(9)(b)(1), Florida Statutes (2006).
We REVERSE the summary judgment for appellee and REMAND for further proceedings.
BROWNING, C.J., and THOMAS, J., concur.